IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02373-BNB-KLM

MAKYNNA HIGH,

Plaintiff,

v.

JIK, INC., a Colorado corporation, d/b/a Denny's Restaurant,
JUN KIM, and
DAN BYRNES,

Defendants.

_____

## ORDER

_____

This matter arises on **Defendants' Motion for Summary Judgment** [Doc. # 59, filed

6/19/2013] (the "Motion for Summary Judgment"), which is DENIED.

## I.

Summary judgment is proper when "the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Equal Employment

Opportunity Comm. v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1190 (10th Cir. 2000).

"When applying this standard, [the court must] view the evidence and draw all reasonable

inferences therefrom in the light most favorable to the party opposing summary judgment."

Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir.

2000)(internal quotation and citation omitted). "A fact is 'material' if, under the governing law,

it could have an effect on the outcome of the lawsuit." Horizon/CMS Healthcare, 220 F.3d at

1190. "A dispute over a material fact is 'genuine' if a rational jury could find in favor of the

nonmoving party on the evidence presented."  Id.

"The burden of showing that no genuine issue of material fact exists is borne by the

moving party."  Id.  "Only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment."  Atlantic Richfield Co.,

226 F.3d at 1148.  All doubts must be resolved in favor of the existence of triable issues of fact.

Boren v. Southwest Bell Tel. Co., 933 F.2d 891, 892 (10th Cir. 1991).

II.

The plaintiff was a waitress at a Denny's restaurant.  Pretrial Order [Doc. # 71] at p. 3.

JIK, Inc., is the franchisee of the Denny's where the plaintiff worked.  Id.  Jun Kim is the owner

of JIK, Inc.  Id.  Dan Byrnes is the district manager for the restaurant, works for JIK, and reports

to Jun Kim.  Id.

The plaintiff brings five claims for relief: (1) Title VII Sexual Harassment and

Discrimination against JIK; (2) Title VII Retaliation against JIK; (3) Sexual Harassment and

Discrimination under the Colorado Anti-Discrimination Act (the "CADA") against JIK; (4)

Retaliation under the CADA against JIK; and (5) violation of Colorado public policy against all

defendants.  Complaint [Doc. # 1].

In Colorado Civil Rights Comm. v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997), the

Colorado Supreme Court adopted in cases brought under the Colorado Anti-Discrimination Act

the analytical framework used in Title VII cases:

> In McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the
> United States Supreme Court set forth the order and allocation of
> proof required for employment discrimination claims filed
> pursuant to Title VII.
> *   *   *
> We now adopt the Supreme Court's analysis set forth in

2

> McDonnell Douglas and its progeny, which represents a clear and
> thorough analytical framework for evaluating claims of
> employment discrimination.

Id. at p. 400.  Consequently, the analysis under the plaintiff's Title VII and CADA claims is

identical.

### A.  Sexual Harassment and Discrimination

In Dick v. Phone Directories Co., Inc., 397 F.3d 1256 (10th Cir. 2005), the Tenth Circuit

Court of Appeals explained:

> Title VII prohibits an employer from discriminating against any
> individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's sex.  This
> statutory provision prohibits subjecting an employee to a hostile
> work environment.  To establish a sexually hostile work
> environment existed, a plaintiff must prove the following elements:
> (1) she is a member of a protected group; (2) she was subjected to
> unwelcome harassment; (3) the harassment was based on sex; and
> (4) due to the harassment's severity or pervasiveness, the
> harassment altered a term, condition, or privilege fo the plaintiff's
> employment and created an abusive working environment.

Id. at 1262-63 (internal quotations and citations omitted).

JIK concedes that the plaintiff is a member of a protected group.  It argues, however, that

she cannot meet the remaining elements of her sexual harassment claim.

In Wirtz v. Kansas Farm Bureau Services, Inc., 274 F. Supp. 2d 1198 (D. Kan. 2003), the

court held:

> To survive summary judgment on a hostile work environment
> claim, plaintiff must show that a rational jury could find that the
> workplace is permeated with discriminatory intimidation, ridicule
> and insult, that is sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive
> working environment.  Title VII does not provide redress for a
> working environment merely tinged with offensive sexual
> connotations.  Therefore, the plaintiff must not only show that

[she] subjectively perceived the environment as hostile or abusive, but that this perception was objectively reasonable.

The court is charged with the duty of filtering out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.

To determine whether the harassment was sufficiently severe or pervasive, the court must examine the totality of the circumstances, including such things as the frequency of the discriminating conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

In order to be actionable, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. The conduct in question must be motivated by gender bias. However, where at least some of the conduct complained of by the plaintiff appears to be gender neutral, plaintiff can still demonstrate hostile work environment because such conduct must be viewed in the context of other overtly gender-discriminatory conduct. Thus, even if some of the alleged conduct was not explicitly sexual in nature, if it reasonably could be inferred that the conduct was related to gender or arose out of a context in which admittedly sex- and gender-related conduct occurred, then it is for the factfinder to decide whether such an inference should be drawn.

Id. at 1209-10 (internal quotations and citations omitted).

In this case, there is evidence which a reasonable jury could believe, demonstrating a severe and pervasively hostile work environment based on the plaintiff's gender.

First, there is evidence that during a prior period of employment with JIK, the plaintiff "stumbled into a one evening intimate encounter with [Min Su Kim (brother-in-law of Jun Kim)] which resulted in non-consensual sex." Response [Doc. # 7] at p. 7; Deposition of Makynna High [Doc. # 60-3] ("High depo.") at p. 52 lines 5-24; p. 160 lines 5-16. A jury could

4

reasonably surmise that Jun Kim was aware of this previous "intimate encounter."

In addition, there is evidence demonstrating that over a period of 14 days--between March 3 and March 16, 2011--the following events occurred:

(1)     On March 4, 2011, Jun Kim called the plaintiff, after working hours and on her personal cell phone.  High depo. at p. 4 lines 3-9. The plaintiff returned the call, which resulted in a 12 minute telephone conversation.  Id. at p. 41 line 16.  During the call, Jun Kim indicated that he was thinking of moving to Denver, id. at p. 123 lines 9-14; attempted to persuade the plaintiff to let him move into her apartment and pay her rent, id. at p. 125 line 15 through p. 126 line 12; asked whether the plaintiff had a boyfriend, invited her to call him when the plaintiff broke up with her boyfriend, and said that he would wait for her, id. at p. 40 line 25 through p. 41 line 8; asked her out to dinner, id. at p. 41 lines 8-10; after learning that the plaintiff had a boyfriend said "[w]e'll take a rain check on dinner and let me know when you break up with your boyfriend," id. at p. 41 lines 4-10; and suggested that they "have a pool party," Deposition of Jun Kim [Doc. # 60-1] ("Jun Kim depo.") at p. 95 line 24 through p. 96 line 6;

(2)     After the plaintiff rebuffed Jun Kim's advances during the March 4 telephone call, Jun Kim told the plaintiff that he was going to replace her as a waitress at the restaurant "[b]ecause you're really ugly, and walked away.  It was very spiteful."  High depo. at p.131 line 3 through p. 132 line 4.  Jun Kim also pushed and pulled the plaintiff around physically, id. at p. 35 line 22 through p. 36 line 4, p. 132 lines15-22;

(3)     Jun Kim approached the plaintiff at work and said "we need to have a party at your apartment and not invite your boyfriend," id. at p. 36 lines 5- 8;

(4)     Jun Kim offered to buy the plaintiff a car, id. at p. 140 lines 16-25, and a new

5

iPhone, id. at p. 144 lines 3-8; and

(5)     Jun Kim singled out the plaintiff during a shift and said "Hey, cutie pie, clean the windows." Id. at p. 37 lines20-24.

The plaintiff understood Jun Kim's conduct to mean that "he wanted a physical sexual relationship with me and wanted to purchase things for me so that I would, and threatened my job at one point. I felt he wanted a sexual relationship with me." Id. at p. 214 line 25 through p. 215 line 7. Jun Kim's sexual advances were unwelcome, and the plaintiff attempted to make that clear. High depo. at p. 15 lines 12-22.

Jun Kim's conduct, if proven, constitutes more than the ordinary tribulations of the workplace, sporadic abusive language, gender-related jokes, or occasional teasing. The conduct, as alleged, was intense over a brief period of two weeks; was severe, included physically threatening aspects; and interfered with the plaintiff's ability to perform her job function, as evidenced by the plaintiff leaving her shift early on March 15, 2011, following Jun Kim's continued advances. Text message [Doc. # 59-4]. The plaintiff found the alleged conduct offensive, and a reasonable jury could as well.

JIK argues that it cannot be held vicariously liable under the facts of this case. In Vance v. Ball State Univ., 133 S. Ct. 2434, 3439 (2013), the Supreme Court held:

> Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.

Jun Kim is the owner of JIK and certainly was a supervisor under the Vance test. JIK

does not argue otherwise

The plaintiff alleges that she was subjected to a tangible employment action--she was terminated the day after reporting Jun Kim's conduct to Dan Byrnes.  Response [Doc. # 60] at pp. 23-24.  JIK responds, however, that Dan Byrnes (JIK's district manager), and not Jun Kim (JIK's owner and president and the plaintiff's harasser), was responsible for terminating her employment.  To establish vicarious liability, JIK argues, the plaintiff "must prove that the tangible employment action was taken by her *harassing* supervisor. . . ."  Motion for Summary Judgment [Doc. # 59-1] at p. 12 (original emphasis).

It is undisputed that between the time he received the plaintiff's text message complaining of sexual harassment on March 15, 2011, and the time he terminated her employment on March 16, 2011, Dan Byrnes spoke to Jun Kim by telephone and met with him in person.  Deposition of Dan Byrnes [Doc. # 60-2] (the "Byrnes depo.") at p. 85 line 16 through p. 86 line 12.  I agree with the plaintiff that "[a] reasonable jury could conclude that Jun Kim either directed Dan Byrnes to fire [her], or knew that Dan Byrnes was going to do so and concurred in the decision."  Response [Doc. # 60] at p. 24.  Consequently, a disputed issue of material fact exists concerning whether Jun Kim is responsible for the tangible employment action taken against the plaintiff.[1]

---

[1]In Faragher v. Boca Raton, 524 U.S. 775, 807 (1998), the Supreme Court held that "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages subject to proof by a preponderance of the evidence. . . .  The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  JIK does not argue that it is entitled to summary judgment on this affirmative defense and, even if it did, there is evidence that the plaintiff attempted to take advantage of corrective opportunities by making the complaint of sexual

The Motion for Summary Judgment is denied with respect to the plaintiff's first and third claims for relief.

## B. Retaliation

Title VII also makes it unlawful for an employer to retaliate against an employee for participating in certain protected activity, including opposing discrimination. Wirtz, 274 F. Supp. 2d at 1211. The law concerning Title VII retaliation has undergone a recent change:

> On June 24, 2013, the Supreme Court revisited the causation standard for a Title VII retaliation claim, holding that these claims "must be proved according to traditional principles of but-for causation, not the lessened causation test" previously used, in which a plaintiff was able to prove a retaliation claim by proving that retaliation was a motivating factor in the employment action.

Cruces v. Int'l Down & Feather Testing Laboratory, 2013 WL 3423259 at *9 (D. Utah July 8, 2013)(citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S.Ct. 2517 (2013)). A Title VII retaliation claim remains subject to the burden shifting test established in McDonnell Douglas, however. Id. at *10. Specifically:

> First, Plaintiff must establish a prima facie case of retaliation. She may do this by showing (1) she engaged in protected opposition to . . . discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. If Plaintiff does this, Defendant must proffer a legitimate, nondiscriminatory reason for the adverse action. Upon Defendant's satisfactory proffer, Plaintiff has the burden of demonstrating that this proffered explanation is a pretext for retaliation.

Id.

JIK's argument that the plaintiff has failed to establish a prima facie case of Title VII

---

harassment to Mr. Byrnes.

retaliation is difficult to follow.  However, it is undisputed that the plaintiff was fired on March

16, 2013, the day after she sent a text message to Dan Byrnes complaining of sexual harassment

by Jun Kim.  The plaintiff's text message complaining of sexual harassment in the workplace

constitutes protected activity, and termination is an adverse employment action.  Wirtz 274 F.

Supp. 2d at 1212-13 (noting that "[i]t is well established that an employee's express complaints

to supervisors about perceived discriminatory practices constitutes protected activity" and that

"[i]nvoluntary termination constitutes adverse employment action").  Finally, "[p]rotected

activity closely followed by adverse action may justify an inference of retaliatory motive."  Id. at

1213.  Here, termination followed the complaint of harassment by one day.  In addition, there is

evidence that Dan Byrnes spoke to Jun Kim on two occasions between the time of the complaint

and the plaintiff's termination but otherwise conducted a cursory "investigation" of the alleged

sexual harassment.   Dan Byrnes never discussed the plaintiff's harassment complaint with her.

High depo. [Doc. # 60-3] at p. 214 lines 7-12.  In addition, as the plaintiff points out, "Byrnes

was conflicted.  He was investigating the man he reported to and who signed his paychecks."

Response [Doc. # 60] at p. 47.  Under the totality of the facts presented, I find that the plaintiff

has made a prima facie showing of causation.

JIK argues that the plaintiff was fired for the non-discriminatory reason of violating

company policy by leaving her shift "without a supervisor's approval prior to the end of one's

scheduled work shift."  Causes for Suspension or Discharge [Doc. # 59-5] at ¶14.  This is the

basis for termination relied on by JIK in its contemporaneous Memo for Record [Doc. # 60-5].  I

find that JIK has met its burden of producing a facially non-discriminatory reason for the

plaintiff's termination.

9

Finally, to survive summary judgment the plaintiff must demonstrate that JIK's proffered

justification for termination is pretextual.  Pretext may be established by showing either "that a

discriminatory reason more likely motivated the employer or . . .  that the employer's proffered

explanation is unworthy of credence."  <u>Rea v. Martin Marietta Corp.</u>, 29 F.3d 1450, 1455 (10th

Cir. 1994) (internal quotation and citation omitted).

The plaintiff argues pretext based on the same evidence presented to establish her prima

facie case.  I find that the plaintiff has presented sufficient evidence for a reasonable jury to

conclude that the proffered explanation is unworthy of credence.  A genuine issue of material

fact exists with respect to the plaintiff's retaliation claims, and summary judgment is denied with

respect to the plaintiff's second and fourth claims for relief.

### C.  Violation of Colorado Public Policy

In her fifth claim for relief, the plaintiff seeks to hold liable all three defendants--JIK (her

employer); Jun Kim (the owner of JIK and the person alleged to have sexually harassed her); and

Dan Byrnes (the district manager of JIK to whom the plaintiff reported the sexual harassment

and who fired her)--for the state law tort of wrongful discharge in violation of Colorado public

policy.  Complaint [Doc. # 1] at ¶¶115-16.  This claim, unlike the plaintiff's other claims, is

directed also against the individuals she alleges engaged in the acts of sexual harassment and

retaliation.

Under similar facts--which included the assertion of claims against the president and

principal stockholder of the corporate employer--the Colorado supreme court held that CADA is

not the exclusive remedy for sex discrimination claims, holding:

> We find no indication that the legislature intended to preclude
> common law sexual harassment claims by enacting the Anti-

> discrimination Act.  No provision explicitly precludes common
> law or other statutory claims.  Nor does the Act provide a
> comprehensive scheme for addressing sex discrimination in the
> workplace that otherwise would indicate "by clear implication" the
> legislature's intent to preclude common law claims.

Brooke v. Restaurant Services, Inc., 906 P.2d 66, 68 (Colo. 1995).

Following Brooke, this court in Kennedy v. Colorado RS, LLC, 872 F. Supp. 2d 1146 (D.

Colo. 2012)(Daniel, C.J.), held:

> I agree with [the plaintiff] that a wrongful discharge claim
> premised on the CADA may lie.  As I have previously found, the
> Brooke court "clearly addressed whether CADA may form the
> basis for a claim of wrongful discharge in violation of public
> policy, holding that it may."

Id. at 1149 (quoting Bronikowski v. Dish Comm., Civil Action No. 01-D-0457 at p. 4 (D. Colo.

Sept. 12, 2001)(unpublished order)).

The defendants fail to address Brooke or Kennedy in their motion for summary judgment.

They argue, instead, that the plaintiff has not alleged and cannot prove the state law elements of

a claim for wrongful discharge.

In Kearl v. Portage Environmental, Inc., 205 P.3d 496 (Colo. App. 2008), the Colorado

court of appeals explained:

> Our supreme court has stated that the public policy exception to
> the at-will employment doctrine is not subject to precise definition,
> yet is grounded in the notion that an employer should be prohibited
> from discharging an employee with impunity for reasons that
> contravene widely accepted and substantial public policies.  The
> identification of a sufficiently clear expression of public policy is
> an issue of law for the court.
>                                          *   *   *
> In Weissman, our supreme court recognized that in certain
> circumstances, an employee terminated in retaliation for exercising
> a job-related right could also state a cognizable claim for wrongful
> discharge. . . .

11

> As pertinent here, the public policy exception allows at-will
> employees to pursue claims for wrongful discharge if they allege
> that they were discharged because they engaged in conduct that is
> protected or encouraged as a matter of public policy.

Id. at 498-99 (citing Crawford Rehab. Servs., Inc. v. Weissman, 938 P.2d 540 (Colo. 1997)).  In

this case, the plaintiff has presented sufficient evidence that she was discharged for resisting

improper sexual advances from Jun Kim and in retaliation for reporting that conduct to Mr.

Byrnes, all of which violate Colorado public policy against sexual harassment in the workplace

and retaliation for reporting that harassment.  See, e.g., section 24-34-402(1)(a), C.R.S. (making

it unlawful discrimination and an unfair employment practice for an employer, among other

things,  to discharge or harass an employee based on sex); and section 24-34-402(1)(e), C.R.S.

(making it unlawful "[f]or any person, whether or not an employer" to aid or abet any act

prohibited under section 402(1)(a); to attempt to commit any act prohibited under section

402(1)(a); or to discriminate against a person "because such person has opposed any practice

made a discriminatory or an unfair employment practice" under section 402(1)(a)).

Summary judgment is denied with respect to the plaintiff's fifth claim for relief.

III.

IT IS ORDERED that the Motion for Summary Judgment [Doc. # 59] is DENIED.

Dated September 3, 2013.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

13